**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID ERKERT** | : | **CIVIL ACTION** |
| *Petitioner-pro se* | : | |
| | : | **NO. 15-5726** |
| **v.** | : | |
| | : | |
| **NANCY GIROUX,** *et al.* | : | |
| *Respondents* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                        JANUARY 11, 2017

# MEMORANDUM OPINION

## INTRODUCTION

Petitioner David Erkert ("Petitioner" or "Erkert"), a Pennsylvania state prisoner who is proceeding *pro se,* filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, and asserts that his trial, appellate, and post-conviction relief counsel were ineffective. [ECF 1]. On November 12, 2015, in accordance with Title 28 U.S.C § 636(b)(1)(A) and Local Civil Rule 72.1.IV(c), the *habeas corpus* petition was referred to United States Magistrate Judge Timothy R. Rice for a *Report and Recommendation* ("R&R"). [ECF 2]. On April 29, 2016, Magistrate Judge Rice issued the R&R, in which he recommended that the petition for a writ of *habeas corpus* be denied. [ECF 9]. Petitioner filed timely objections to the R&R. [ECF 11]. This matter is ripe for a *de novo* determination of the objections to portions of the report.

After a thorough *de novo* review of the state court record, the *habeas corpus* petition, the memorandum of law in support of the *habeas corpus* petition, [ECF 6], the R&R, and Petitioner's specific objections, for the reasons stated herein, Petitioner's objections are

overruled, the R&R is approved and adopted, and the petition for a writ of *habeas corpus* is denied.[1]

**BACKGROUND**

Because the R&R provides a thorough summary of the facts in this matter, this Court will only highlight the relevant evidence necessary to address Petitioner's objections.  Succinctly, the facts are:

In February 2004, Petitioner was indicted in the Delaware County Court of Common Pleas on two cases: (1) one involving three charges of involuntarily deviant sexual intercourse (the "IDSI case"); and (2) the other involving attempted murder, aggravated assault, terroristic threats, retaliation against a witness, and possession of a weapon (the "attempted murder case").  In December 2005, the trial court consolidated the two cases.  In March 2006, Petitioner was tried before a jury which was presided over by the Honorable Ann Osborne.  Briefly, the pertinent evidence presented at trial is as follows:

In the summer of 2003, 16-year-old W.M., his older brother, and his brother's girlfriend went to Erkert's home to consume alcohol.  Erkert, who was 36, was friends with W.M.'s brother and some of W.M.'s friends.  After drinking, W.M. passed out and awoke to find Erkert on top of him performing oral sex.  When W.M. told him to stop, Erkert punched him and continued to sexually assault him.  Erkert took W.M. home and threatened to hurt him if he told anyone about the incident.  Erkert sexually assaulted W.M. twice more in 2003.

In early 2004, W.M. told his father, M.M., about the sexual assaults by Erkert.  W.M. and M.M. went to the police station where W.M. provided a statement to Detective Beese about the sexual assaults. The police attempted to contact Erkert about the charges, but could not locate him. Late one night approximately one week later, Erkert broke into M.M. and W.M.'s home armed with a machete.  Erkert threatened to kill M.M. and struck him with the machete.  He also attempted to locate W.M., who was hiding in a closet. M.M. eventually restrained Erkert until the police arrived.

---

[1]    Petitioner also filed a *motion for a certificate of appealability*.  [ECF 13].  For the reasons stated herein, this Court also denies Petitioner's motion for certification.

Erkert was arrested and, a few days later, provided a statement to Detective Beese. Erkert admitted to having oral sex with W.M. on three occasions, but stated W.M. had initiated the sex and consented. He further admitted to going to W.M.'s home late one night to speak to W.M. about his false accusations to the police. He said he was not in the right state of mind and brought a machete for his protection.

During the *voir dire* process, a potential juror, Ms. Kohler, stated that Detective Beese, a witness for the prosecution, was a close family friend and that despite this association, she could be fair and impartial. Neither the prosecutor nor defense counsel moved to strike or challenge Ms. Kohler's qualifications during their respective selection process. Ms. Kohler was selected as an alternate juror. On the third day of trial, a juror became unavailable and Ms. Kohler was substituted in place of said juror. Prior to being seated, however, the trial judge again questioned Ms. Kohler regarding her relationship with Detective Beese. Ms. Kohler stated that Detective Beese lived near her and when she was younger she had an affectionate relationship with him, and had named her cat after him. She reiterated that her relationship with Detective Beese would not affect her ability to be fair and impartial. Again, neither party asked any questions or objected to her serving on the jury.

At the conclusion of his trial, Petitioner was convicted of attempted murder, two counts of aggravated assault, possession of a weapon, retaliation against a witness, burglary, and three counts of involuntarily deviant sexual intercourse. He was subsequently sentenced to an aggregate term of thirty-five and one-half (35.5) to seventy-three (73) years of incarceration, to be followed by thirty-five (35) years of probation.[2]

On October 20, 2015, Petitioner timely filed the underlying *pro se* petition for writ of *habeas corpus*. [ECF 1]. In his *habeas* petition, Petitioner asserts ineffective assistance of counsel claims, claiming that: (1) trial counsel was ineffective for causing him to waive his right to testify; (2) trial counsel was ineffective for failing to strike Ms. Kohler, a biased juror; and (3)

---

[2]   Following his conviction and sentence, Petitioner filed a timely appeal with the Superior Court of Pennsylvania. On July 9, 2009, the Superior Court denied the appeal and affirmed the judgment of sentence. Petitioner did not file an allowance of appeal to the Pennsylvania Supreme Court nor seek a writ of certiorari from the United States Supreme Court. Instead, on May 26, 2010, Petitioner filed a *pro se* petition for relief under the Pennsylvania Post-Conviction Relief Act, 42 Pa. Const. Stat. Ann. § 9524, *et. seq.*, ("PCRA"). On April 13, 2012, an amended petition was filed by PCRA counsel. Following an evidentiary hearing on the PCRA petition, the PCRA court dismissed Petitioner's petition. An appeal followed and the Superior Court affirmed the dismissal; the Pennsylvania Supreme Court denied the petition seeking an allowance of appeal.

his PCRA counsel was ineffective for failing to argue that appellate counsel was ineffective for failing to argue that the consolidation of his IDSI case with the attempted murder case violated his constitutional right to testify at trial.  (*Id.* at 5-9).

As stated, the *habeas* petition was referred to Magistrate Judge Rice, who submitted a well-reasoned R&R addressing Petitioner's *habeas* claims and recommending that the petition be denied.  Petitioner filed timely objections to the R&R.

## LEGAL STANDARD

Where objections to an R&R are filed, the court must conduct a *de novo* review of the contested portions of the R&R, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(C)), provided that the objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 607 (3d Cir. 1984).  In conducting its *de novo* determination, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge.  28 U.S.C. § 636(b)(1).  Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7.  Objections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review.  *Becker v. Tennis*, 2011 WL 2550544, at *1 n.3 (E.D. Pa. June 23, 2011) (court declining to address contentions included in petitioner's objections, concluding that they are "nothing more than a restatement of the underlying claims contained in his petition.") (citing *Morgan v. Astrue*, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)); *see also Nghiem v. Kerestes*, 2009 WL 960046, at *1 n.1 (E.D. Pa. Apr. 3, 2009) (court declining to engage in additional review of objections where the objections merely re-articulated all the claims and theories for relief that were addressed and dismissed by the magistrate judge).

4

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standards for reviewing state court judgments in federal *habeas* petitions filed pursuant to 28 U.S.C. § 2254, and restricted the circumstances under which a federal habeas court may grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court." 28 U.S.C. § 2254(d); *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir. 2000); *see also, Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Werts*, 228 F.3d at 196; *Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996). In accordance with § 2254(d), a *habeas corpus* petition may only be granted if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 376 (2000).

To establish that the state court decision was "contrary to" federal law, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (emphasis in original). Similarly, a federal court may only find a state court decision to be an "unreasonable application" of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id*. at 890.

Factual issues determined by a state court are presumed to be correct and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  "This presumption of correctness applies to factual determinations of both state trial and appellate courts."  *Lewis v. Horn,* 581 F.3d 92, 111 (3d Cir. 2009).  Consequently, a *habeas* petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings."  *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).  That is, "the requirements of 2254(d) are difficult to meet," *Johnson v. Williams*, 133 S. Ct. 1088, 1091 (2013), as this section "sharply limits the circumstances in which a federal court may issue a writ of habeas corpus to a state prisoner."  *Id.* at 1094.

Here, Petitioner asserts claims of ineffective assistance of counsel.  When addressing the merits of ineffective assistance of counsel claims on *habeas* review, the court is to consider the "clearly established federal law" two-pronged inquiry articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984).  Thus, to sustain an ineffectiveness assistance of counsel claim, a petitioner must show that counsel's performance was objectively deficient, and that this deficient performance prejudiced the defense.  *Id.* at 687.  To establish that counsel was deficient requires the petitioner to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*  To show prejudice, the petitioner must make a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.*; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different.").  However, a court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness.  *Strickland*,

466 U.S. at 689; *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996). Under the *Strickland* standard, "counsel cannot be held ineffective for failing to raise a claim that is without merit or futile." *Boston v. Mooney*, 2015 WL 6674530, at *12 (E.D. Pa. Jan. 9, 2015) (internal citations omitted).

Where the state court has denied an ineffectiveness claim on its merits, a *habeas* petitioner must show the state court's decision was "objectively unreasonable." *Renico v. Lett*, 559 U.S. 766, 773 (2010); *see also Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (review of ineffectiveness claims is "doubly deferential when it is conducted through the lens of federal habeas"). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v. Cone*, 535 U.S. 685, 698-99 (2002).

**DISCUSSION**

With these principles in mind, this Court will address Petitioner's claims in turn; *to wit*: that trial counsel was ineffective for the advice given which caused him to waive his right to testify and for not striking a biased juror; and that his PCRA counsel was ineffective for failing to argue that his appellate counsel was ineffective for not arguing that the consolidation of his two unrelated cases denied him his constitutional right to testify.

*Trial Counsel Ineffectiveness for Causing Petitioner to Waive Right to Testify*

Petitioner contends that despite wanting to testify in the IDSI case to refute the victim's testimony and to establish his state of mind before and during the alleged sexual assaults, he did not testify on the advice of counsel. [ECF 6 at 6]. Petitioner also contends that trial counsel "erroneously informed him that he could be questioned about a prior drug conviction," and/or about events relevant to the attempted murder case. (*Id.* at 6-7).

As to the latter aspect of his ineffectiveness of trial counsel claim, Magistrate Judge Rice noted that Petitioner did not raise this claim in his PRCA proceeding and, therefore, this claim is unexhausted, and procedurally defaulted because the time to raise this issue in state court has passed.  (R&R at 5).[3]  This Court agrees.  Notably, Petitioner has not objected to the R&R regarding this claim.  Thus, this Court's review of this finding is made under the plain error standard.[4]  After a thorough review of the record and the R&R, this Court finds no error in the Magistrate Judge's conclusion as to this claim.

As to the former aspect of his ineffectiveness of trial counsel claim, that trial counsel was ineffective for not advising him as to which facts regarding the attempted murder case he could be cross-examined if he chose to testify in the IDSI case, Petitioner made this same argument in his PCRA proceedings.  [ECF 8-7 ¶ 12(A)].  On appeal of the PCRA decision, the Superior Court rejected the argument on the merits, and noted that while Petitioner initially expressed confusion during the colloquy on whether the prosecutor would be entitled to question him regarding facts of the attempted murder case should he decided to testify, Petitioner later stated

---

[3]      "[A] federal habeas court may not grant a petition for writ of habeas corpus unless the petitioner has first exhausted the remedies available in the state courts." *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997) (citing 28 U.S.C. § 2254(b)(1)(A)).  "[I]f [a] petitioner failed to exhaust state remedies and the court to which petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is procedural default for the purpose of federal habeas . . . ."  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999).  To survive procedural default in the federal courts, a petitioner must either "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

[4]      In the absence of any objections, this Court reviewed the R&R under the "plain error" standard.  *See Facyson v. Barnhart*, 2003 WL 22436274, at *2 (E.D. Pa. May 30, 2003).  Under this plain error standard of review, an R&R should only be rejected if the magistrate judge commits an error that was "(1) clear or obvious, (2) affect[ed] 'substantial rights,' and (3) seriously affected the fairness, integrity or public reputation of judicial proceedings."  *Leyva v. Williams*, 504 F.3d 357, 363 (3d Cir. 2007) (internal quotations and citations omitted).

that his attorneys explained that he could be questioned about some facts related to the attempted murder case and that he understood the explanation. *Com. v. Erkert*, 2015 WL 7431521, at *3-4 (Pa. Super. Ct. Mar. 11, 2015).   Based upon Petitioner's acknowledgement that he understood counsels' explanation as to the potential scope of cross-examination he might face should he testify, the Superior Court concluded that trial counsel was not ineffective. *Id.* at 4.

In his objection, Petitioner expresses frustration for not understanding the legal scope of the cross-examination he faced had he decided to testify in the IDSI case, and disagrees with the Magistrate Judge's finding by stating that the Magistrate Judge "can opine what he likes but the truth is [I] still don't understand to this day how [I] could testify in one case and not the other while the cases were being tried together." [ECF 11 at 1].   Because Petitioner's objections to the Magistrate Judge's findings and recommendation regarding this claim are essentially the same claims and arguments addressed by the Magistrate Judge, this Court does not need to perform a *de novo* review, nor is one warranted, since doing so would "defeat any benefit of judicial efficiency gained by the report and recommendation process."  *Palmer v. Astrue*, 2010 WL 1254266, at *2 (E.D. Pa. Mar. 31, 2010) (quoting *Morgan*, 2009 WL 3541001, at *4); *see also, e.g.*, *Becker*, 2011 WL 2550544, at *1 n.3.   Yet, in the interest of judicial economy, this Court considered this claim *de novo*.

Generally, the rules of evidence govern the admissibility of evidence at trial. Pennsylvania Rule of Evidence 611(b) provides in part that while cross-examination is generally "limited to the subject matter of the direct examination and matters affecting credibility," the trial court "may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."  Pa. R. Evid. 611(b); *see also Com. v. Green*, 581 A.2d 544, 558–59 (1990) ("In criminal cases, the right of cross-examination extends beyond the subjects testified to on

direct testimony and includes the right to examine a witness on any facts tending to refute inferences or deductions arising from matters testified to on direct examination.").  Thus, had Petitioner taken the stand to testify in the IDSI case, it would have been the trial judge's discretion whether Petitioner would have been required to testify, if questioned, as to the events relevant to the attempted murder case.  Such judicial determination depends on many factors, such as what Petitioner may have testified to on direct examination, the interplay between the events in the IDSI case and his alleged motive in the attempted murder case, and the prosecutor's discretion and obligations to the state regarding the events relevant to the attempted murder case. Further, despite Petitioner's assertion to the contrary, his trial counsel was given and obliged themselves of ample time to discuss and explain to Petitioner the possible ramifications of testifying, a fact Petitioner acknowledged and affirmed he understood.

Therefore, after carefully reviewing the entire record, this Court finds that the Superior Court's ruling was not contrary to, or an unreasonable application of, clearly established federal law, namely, *Strickland*.  Because trial counsel had a reasonable basis to advise Petitioner not to testify, advice that Petitioner acknowledged at the time that he understood, Petitioner's ineffectiveness of counsel argument fails. *See* 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 668, 687; *Renico*, 559 U.S. at 733.  Therefore, Petitioner's objections as to this claim are overruled.[5]

---

[5]     Petitioner also asserts that the Superior Court's decision was contrary to *Strickland* because it did not perform a prejudice review.  [ECF 6 at 9-10].  Petitioner is mistaken.  Because Petitioner could not establish that his trial counsels' performance was deficient, Petitioner could not succeed on his ineffective assistance of counsel claim.  Thus, the Superior Court was not required to consider the prejudice element of the *Strickland* analysis.  *See Strickland*, 466 U.S. at 687 (holding that to sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient *and* that this deficient performance prejudiced the defense.).  Once Petitioner failed in showing that trial counsel was deficient, there was no need to address the prejudice prong.

*Trial Counsel Ineffectiveness for Failing to Strike Biased Juror*

Petitioner contends that trial counsel was ineffective for failing to strike Ms. Kohler from the jury on the basis that she was an "obviously biased juror." [ECF 6 at 11]. The Magistrate Judge concluded that the Superior Court's opinion that trial counsel was effective was not an unreasonable application of *Strickland* and, thus, recommended denying Petitioner relief on this claim. (R&R at 11-12). Petitioner objects to this recommendation, and argues that his trial counsel were deficient because trial counsel never discussed Ms. Kohler with him during *voir dire* and, had they, he never would have agreed to allow a family friend of the arresting officer to be selected as a juror. [ECF 11 at 2]. Petitioner contends that Ms. Kohler was biased in favor of the prosecution in general, and that failing to challenge her qualifications was an unreasonable trial strategy on the part of his trial counsel. (*Id.* at 2-3).

As to Petitioner's contention that his trial counsel never discussed Ms. Kohler with him during *voir dire*, the record contradicts this contention. Specifically, in the Superior Court's opinion, said court noted that one of Petitioner's trial attorneys testified at the PCRA hearing that he "discussed [Ms. Kohler's] familiarity with Detective Beese with Erkert," and told Petitioner "that they could seek to strike this juror, but that it was their recommendation to keep her because she fit their overall *voir dire* strategy."[6] *Erkert*, 2015 WL 7431521, at *4. This overall *voir dire* strategy was to have young individuals on the jury. Petitioner "went along" with the recommendation and did not object to keeping Ms. Kohler on the panel. (*Id.*). Petitioner disputes this factual finding and argues that his trial counsel is "either both lying to save face, or their memory of it is befuddled," since he was never told of Ms. Kohler's potential bias. [ECF 11 at 2]. Based upon the record before this Court, Petitioner has failed, however, to rebut, by

---

[6]     Initially, Ms. Kohler was selected as an alternate, but later became part of the jury deciding Petitioner's cases.

clear and convincing evidence, the Superior Court's factual findings that he was informed of Ms. Kohler's potential bias and agreed to allow her to be selected. *See* 28 U.S.C. § 2254(e)(1); *Mastracchio*, 274 F.3d at 597-98. As such, deference is given to the presumption of correctness of the state court's factual finding. Accordingly, Petitioner's objection on this ground is overruled.

As to Petitioner's argument that failing to challenge or strike Ms. Kohler as a juror was an unreasonable trial strategy on the part of his trial attorneys, the Superior Court considered, and rejected, this argument. The Superior Court, while noting that the claim had "arguable merit," ultimately concluded that Petitioner failed to establish that trial counsel had no reasonable basis for their decision to seek to strike Ms. Kohler from the jury. *Erkert*, 2015 WL 7431521, at *4. To the contrary, the Superior Court noted that trial counsel testified at the PCRA hearing that their strategy for *voir dire* was to select younger jurors because counsel believed that "younger jurors would be more willing to accept Erkert's defense to the sex case – that the homosexual relationship between them was consensual." *Id*. The Superior Court accepted counsels' sound legal strategy explanation and noted that Petitioner "failed to allege, much less prove, that the strategy of seating younger jurors at all costs did not provide a reasonable basis designed to effectuate his interests." *Id.*[7]

In giving the appropriate deference to trial counsels' strategic legal decisions, *see Strickland*, 466 U.S. at 689, and to the Superior Court's determination that counsels' decision was strategic and reasonable, *see Renico*, 559 U.S. at 773, this Court finds that the decision of

---

[7]    Pennsylvania essentially applies the same test for ineffectiveness assistance of counsel as the federal courts. *See Werts v. Vaughn*, 228 F.3d 178, 203-04 (3d Cir. 2000); *Commonwealth v. Sneed*, 899 A.2d 1067, 1076 (Pa. 2006) (Requireing a petitioner to show: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interest; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different.").

trial counsel to not challenge Ms. Kohler, despite her familiarity with Detective Beese, in order to seat younger jurors on the panel who might be more inclined to favor Petitioner and understand the homosexual acts, was not so erroneous so as to conclude that counsel was "not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*, 466 U.S. at 687.  Thus, trial counsel did not provide ineffective representation or assistance. While other defense attorneys may have made a different strategic decision, "[t]here are countless ways to provide effective assistance in any given case [and even] the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689 (Noting that it "is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.").  Accordingly, Petitioner's objection on this ground is overruled.

Even assuming that trial counsel should have objected to Ms. Kohler, Petitioner has not established the second prong of the inquiry; that he was prejudiced by trial counsels' decision not to challenge Ms. Kohler's placement on the jury.  A review of the record shows that even if Ms. Kohler was predisposed to accept Detective Beese's testimony, despite claiming she would be impartial, the prosecution presented additional damaging evidence to prove its case against Petitioner, including the testimony of M.M.  Notwithstanding Petitioner's conclusory assertion that Ms. Kohler's relationship with Detective Beese automatically predisposes her to the prosecution, Petitioner has failed to provide any support that the results of the verdict would have been different had Ms. Kohler been struck from the jury.  *See Frey*, 974 F.2d 348, 358 ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the

result would have been different.").[8]  In light of this additional consideration, Petitioner has failed to prove prejudice and, therefore, his objection on this ground is overruled.

*PCRA Counsel Ineffectiveness for Failing to Argue Appellate Counsel Ineffectiveness*

Lastly, Petitioner contends that his PCRA counsel was ineffective for failing to argue that appellate counsel was ineffective for not arguing that the consolidation of the IDSI and attempted murder cases unconstitutionally denied him his right to testify.  However, claims of ineffective assistance of PCRA counsel are not cognizable on *habeas* review.  *See* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *Coleman*, 501 U.S. at 725 ("Because there is no constitutional right to an attorney in state post conviction proceedings . . . a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings.") (internal citations omitted).[9]  Accordingly, Petitioner's claim for habeas relief on this ground is denied.

**CONCLUSION**

For the reasons stated herein, Petitioner's objections to the Report and Recommendation lack merit and are overruled.  Consequently, the Report and Recommendation is approved and

---

[8]     This Court also notes that, under Pennsylvania case law, a prospective juror should be excused for cause "when the potential juror has such a close relationship, be it familial, financial or situational, with parties, counsel, victims, or witnesses" such that prejudice should be presumed.  *Com. v. Lipinski*, 2014 WL 10965379, at *4 (Pa. Super. Ct. Mar. 27, 2014).  Remote relationships to an involved party are not a basis for disqualification where the prospective juror, as occurred here, indicates during *voir dire* that he or she will not be prejudiced.  *Id.* at 4-5 (noting that, in an earlier case, the trial court's decision not to disqualify the son-in-law of the investigating detective was not error).  In this case, Ms. Kohler's relationship was not with one of the victims, the prosecutor, or a material witness to the actual events at issue.  For these additional reasons, Petitioner cannot show that he was prejudiced by Ms. Kohler's inclusion on the jury.

[9]     Under limited circumstances, the ineffectiveness of collateral counsel can establish cause for a procedural default of an ineffective assistance of trial counsel claim.  *Martinez v. Ryan*, 132 S. Ct. 1309, 1320 (2012)

adopted, and Petitioner's *pro se* petition for a writ of *habeas corpus* is denied.   Because reasonable jurists would not debate the disposition of Petitioner's claims, a certificate of appealability is denied.[10]   *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

---

[10]      In his motion, Petitioner asserts that "other jurists would possible feel that these issues have merit and are deserving of review."  [ECF 13 at 1].  Petitioner does not provide any legal or factual support for this contention.  This Court, after its thorough review of the record, disagrees with Petitioner's contention. Thus, Petitioner's motion is denied.